# In the United States Court of Federal Claims

No. 20-1416C

(E-filed: March 22, 2021)[1]

|  |  |  |
|---|---|---|
| SALIENT FEDERAL – SGIS, INC., | ) ) ) | |
| Plaintiff, | ) ) | Pre-Award Bid Protest; Motion for Judgment on the Administrative Record; RCFC 52.1; Latent Ambiguity; Disparate Treatment. |
| v. | ) ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

Lawrence P. Block, Washington DC, for plaintiff. Elizabeth Leavy, William Kirkwood, Charles Pierre, of counsel.

Sheryl L. Floyd, Senior Trial Counsel, with whom were Jeffrey Bossert Clark, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Lisa L. Donahue, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

OPINION

CAMPBELL-SMITH, Judge.

Plaintiff filed this pre-award bid protest to challenge its elimination from consideration by the United States Food and Drug Administration (FDA) for award of a contract to provide development, modernization, and enhancement services and software applications operations and maintenance services for the FDA's information technology (IT) investments. See ECF No. 1 at 1, 5 (complaint). Plaintiff filed a motion for judgment on the administrative record (AR) on November 25, 2020, ECF No. 29; and defendant filed its cross-motion for judgment on the AR and response to plaintiff's

---

[1] This opinion was issued under seal on March 5, 2021. See ECF No. 39. The parties were invited to identify source selection, propriety or confidential material subject to deletion on the basis that the material is protective/privileged. No redactions were proposed by the parties. See ECF No. 41 (notice). Thus, the sealed and the public versions of this opinion are identical, except for the publication date and this footnote.

motion on December 15, 2020, ECF No. 31.  Plaintiff filed its response to the cross-motion and reply in support of its motion on December 23, 2020, ECF No. 33; and defendant filed its reply on January 11, 2021, ECF No. 35.

In addition to these motions, the court has reviewed plaintiff's complaint, ECF No. 1, and the AR, ECF No. 26.  This matter is now fully briefed, and ripe for decision.  The court deemed oral argument unnecessary.  The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion.  For the following reasons, plaintiff's motion for judgment on the AR is **DENIED**, and defendant's cross-motion for judgment on the AR is **GRANTED**.

I. Background

    A. The Solicitation

The FDA issued a blanket purchase agreement request for quotation (RFQ), number FDA-RFQ-20-00002, on December 30, 2019, seeking quotes for a single award contract for "both development, modernization, and enhancement (DME) and software applications operations and maintenance (O&M) for [its Office of Regulatory Affairs (ORA)] IT investments."  ECF No. 26-2 at 396-97 (RFQ Amendment 1); 13 (RFQ).  The ORA conducts all FDA field activities including, among other things, "inspect[ing] regulated products and manufacturers, conduct[ing] sample analyses of regulated products, and review[ing] imported products offered for entry into the United States."  Id. at 410.  Therefore, the contract sought both DME and O&M services that would "add functionality to existing ORA Systems to address new legislative or regulatory mandates, emerging health concerns, and shifting FDA priorities," id. at 412, and provide software services allowing the ORA users to "conduct mission critical business processes, including review of goods offered for imports, inspection of regulated facilities, and management of recalls, that are necessary to protect the health and safety of consumers," id. at 411.

The RFQ provided that the FDA would award the contract to the responsible contractor whose quote represented the "best value to the Government, considering price and technical factors."  Id. at 397.  Pertinent to this protest, evaluation was to begin with review and rating of the quoters' relevant experience as either acceptable or unacceptable.  See id. at 398.  Relevant experience was to be deemed unacceptable if it contained any altered documentation, if it did not satisfy all of the evaluation criteria or included additional documentation, or if it failed to include any element required by the instructions.  See id. at 403.  If a quoter's relevant experience was deemed unacceptable, "quote evaluation [would] cease and the quote [would] no longer [ ] be considered for award."  Id. at 398.

In their relevant experience section, quoters were required to provide:

a copy of one (1) Award IDIQ/BPA/Basic Ordering Agreements (BOA) (in which the Quoter performed as the Prime) to include at least three (3) concurrent orders/modifications/tasks on the same Award IDIQ/BPA/BOA within the last five (5) years from this initial RFQ BPA release date that demonstrate the following:

1.   The concurrent orders/modifications/tasks provided on the same Award IDIQ/BPA/BOA within the last five (5) years from this initial RFQ BPA release date must collectively have a total funded/obligated value of at least $30 million within a 12-month period.

2.   Collectively the orders/modifications/tasks on the awards listed to demonstrate the total funded/obligated value of $30 million within a 12-month period encompass similar scope to the task areas of the BPA (See Attachment A [scope of work (SOW)] Task Area) provided in Amendment 1 Attachment E Relevant Experience Matrix Tab 1 for Task Area: 2.2, 2.6, and 2.7.[2]

Id. at 402 (language marked for deletion by this amendment omitted).  The task areas identified in the SOW as those to which similar experience must be provided by the quoters included section 2.2, "Systems Integration and Engineering Services," id. at 418-19, section 2.6, "Development, Modernization and Enhancement (DME) Support," id. at 422-24, and section 2.7, "Operations and Maintenance (O&M) Support Services," id. at 424-25.  Relevant to this protest, section 2.2 required the quoter to "support ORA with systems integration and systems engineering services," and section 2.7 required that the quoter "be responsible for maintaining the 'lights on' performance, availability, reliability, and security standards for the ORA systems through the full range of O&M services."  Id. at 418, 424.  Each section included a general description of its requirement and a list of representative tasks.  Id.

Quoters were to provide copies of the relevant contracts and task orders, and to input specific citations to those orders demonstrating their experience in each relevant task area in a matrix provided in the RFQ.  See id. at 402.  The FDA would "only evaluate the references in orders/modifications/tasks that the Quoter has listed" in the matrix.  Id.; see also id. at 478-80 (relevant experience task matrix).

---

[2]   Quoters were also required to provide experience related to section 2.3.1 of the SOW, but that experience is not relevant to this protest.  See ECF No. 26-2 at 402; ECF No. 29-1.

B.     The Evaluation

Plaintiff submitted its bid materials on February 2, 2020, including its relevant experience contract, task orders, and matrix. See ECF No. 26-2 at 500 (submission email), 504-86 (contract and task orders); 948-50 (relevant experience task matrix). The FDA received six proposals in response to the RFQ. See ECF No. 26-3 at 54-55 (Evaluation of Technical Quotations). The FDA's technical evaluation team (PAG) reviewed the proposals and evaluated each quoter's relevant experience to determine whether it was acceptable or unacceptable. See id. at 51, 56. The PAG documented its process of evaluation and the specific ratings and rationale for each quoter in the Evaluation of Technical Quotations. See id. at 48-83. The PAG's evaluation process involved first, an individual review by each PAG member, and then a consensus session in which the PAG members "discussed the individual ratings and members arrived at a common agreement whether the Quoter met or did not meet the evaluation criteria which supported the assignment of the adjectival ratings **Acceptable or Unacceptable**." Id. at 56. Of the six submissions, the PAG found that two quoters provided acceptable relevant experience information; plaintiff's information was found to be unacceptable. See id. at 57.

The PAG's evaluation of plaintiff's relevant experience was as follows:

> the six concurrent awards the Quoter provided did not encompass similar scope to two (2) of the five (5) tasks under BPA SOW Task 2.2 Systems Integration and Engineering Services. The two (2) areas in BPA SOW Task 2.2 that the Quoter failed to provide sufficient evidence include:
>
> - Provide systems integration and systems engineering services for a complex environment of interdependent systems
> - Coordinate data sharing and reuse efforts with enterprise systems/application owners and/or other Contractors.
>
> Additionally, the Quoter's references did not encompass similar scope to one (1) of the six (6) tasks under BPA SOW Task 2.7 Operations and Maintenance (O&M) and Support Services:
>
> - Provide 24x7 support to ensure systems are operating normally and available to end users.

Id. at 75-76. The PAG also made detailed comments as to each of the relevant experience areas plaintiff met, and those it did not. See id. at 76-83.

Under task 2.2, the PAG found plaintiff failed to: (1) "[p]rovide systems integration and systems engineering services for a complex environment of interdependent systems"; and (2) "[c]oordinate data sharing and reuse efforts with

4

enterprise systems/application owners and/or other Contractors." Id. at 77. The PAG noted that plaintiff's citations for the first area of task 2.2 involved, "systems integration and systems engineering services to varying degrees however they do not demonstrate such activities in a complex environment of interdependent systems." Id. at 78. The PAG then reviewed and described in detail each citation plaintiff provided, finding that plaintiff's experience was not similar to that required in task 2.2 because plaintiff's experience: (1) did not require integration of interdependent systems; (2) involved O&M work rather than the relevant DME work; (3) was outside the scope of work required; (4) involved network infrastructure and architecture rather than systems integration and engineering; or (5) did not meet the level of complexity required. See id. at 78-80.

As to the second requirement of task 2.2, the PAG found that although plaintiff provided three citations, none of them demonstrated that plaintiff had coordinated data sharing efforts among enterprise systems owners or other contractors. See id. at 80. Of the three citations the PAG reviewed in detail, the PAG found that plaintiff's activities were "not specific and [were] administrative tasks," did not involve data sharing with an enterprise, or involved network architecture outside the scope of the RFQ. Id. at 80-81.

The PAG also found that plaintiff failed to meet the requirement of task 2.7, specifically that it demonstrate its ability to "[p]rovide 24x7 support to ensure systems are operating normally and available to end users." Id. at 81. One of plaintiff's three cited task orders "fell outside the 12-month period used to demonstrate a funded/obligated value of $30 million," and therefore was not eligible for consideration. Id. However, the PAG found that, even if that task order were considered, "the seven (7) citations provided referenced network and/or infrastructure support which is different from systems support" and failed to demonstrate full 24x7 support; therefore, plaintiff failed to satisfy the requirement. Id. at 81-83.

In the PAG's assessment, plaintiff's relevant experience was unacceptable. Id. at 75-76. The FDA thus notified Salient CRGT, Inc.—plaintiff's parent company—that it had been eliminated from the competition on July 13, 2020. See ECF No. 26-2 at 987-98; see also ECF No. 26-1 at 82 (defendant's response to plaintiff's Government Accountability Office (GAO) protest, noting that Salient CRGT, Inc. is plaintiff's parent company). The FDA stated that, "[a]fter a thorough review, the quote was determined to be unacceptable for Factor 1 Relevant Experience to the BPA; therefore, the quote will no longer be considered for award." ECF No. 26-2 at 987.

   C.   Plaintiff's Bid Protest

On July 22, 2020, Salient CRGT, Inc. filed a protest at the GAO of its wholly owned subsidiary's—that is, plaintiff's—elimination from further evaluation. See ECF No. 26-1 at 7-81. Seven days later, on July 29, 2020, the FDA asked that the protest be dismissed for lack of jurisdiction because Salient CRGT was not an interested party in the

matter.  See ECF No. 26-1 at 82-85.  After briefing on the issue, the GAO dismissed the protest on October 7, 2020, finding that Salient CRGT was not an interested party.  See ECF No. 26-3 at 30-32.

Plaintiff filed its complaint in this court on October 19, 2020, alleging that "the FDA's decision to exclude [plaintiff] was arbitrary and capricious as it was based on a factually inaccurate conclusion that [plaintiff's] quote did not meet three (3) of the twenty one (21) required areas under relevant corporate experience."  ECF No. 1 at 1.  Plaintiff contends that the FDA's conclusion was "based on its misreading of the contracts submitted by [plaintiff] to demonstrate its corporate experience, as well as FDA's application of unstated requirements, failure to adhere to the RFQ's stated evaluation criteria, latent ambiguities in the RFQ, and disparate treatment of quoters."  Id.

The parties then filed their cross-motions for judgment on the AR, which are now before the court.

II.    Legal Standards

The Tucker Act grants this court jurisdiction:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1).

The court's analysis of a "bid protest proceeds in two steps."  Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005).  First, the court determines, pursuant to the Administrative Procedure Act standard of review, 5 U.S.C. § 706, whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law."  Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4) (adopting the standard of 5 U.S.C. § 706)).  If the court finds that the agency acted in error, the court then must determine whether the error was prejudicial.  See Bannum, 404 F.3d at 1351.

Given the considerable discretion allowed contracting officers, the standard of review is "highly deferential."  Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000).  As the Supreme Court of the United States has explained, the scope of review under the "arbitrary and capricious" standard is narrow.  See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974).  "A

reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," and "[t]he court is not empowered to substitute its judgment for that of the agency.'" Id. (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)); see also Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1368-69 (Fed. Cir. 2009) (stating that under highly deferential rational basis review, the court will "sustain an agency action 'evincing rational reasoning and consideration of relevant factors'") (citing Advanced Data Concepts, 216 F.3d at 1058).

III.   Analysis

    A.   The FDA's Evaluation of Plaintiff's Proposal Was Not Arbitrary or Capricious

Plaintiff argues that the FDA's evaluation of its proposal was arbitrary and capricious because it "made inaccurate assumptions about the content of [plaintiff's] experience" as a result of its "complete failure to read and evaluate the specific portions of the contract examples contained in [plaintiff's] quote," its reliance on the title of the contract sections plaintiff cited instead of the content of the sections, and its review of "only a narrow portion of the contract examples." ECF No. 29-1 at 9, 23-26, 27-29. Further, plaintiff contends, the FDA applied unstated criteria in its evaluation. See id. at 12-18, 26-27, 29-31. It did so, according to plaintiff, by irrationally limiting and defining the RFQ's requirements. See id. at 18-22, 26-27, 29-31.

In support of its argument, plaintiff cites several examples of areas in which it alleges that the FDA "failed to credit," id. at 10, plaintiff with the experience plaintiff contends it demonstrated. See, e.g., id. at 10-12. Specifically, in the context of the agency's review of plaintiff's experience related to RFQ section 2.2's requirement that plaintiff demonstrate experience "providing systems integration and systems engineering services for a complex environment of interdependent systems," id. at 10, plaintiff argues that:

- The FDA reviewed the third paragraph of plaintiff's cited task order instead of the second paragraph as cited by plaintiff, see id.;

- The FDA reviewed only one of the referenced pages of that same task, rather than evaluating both of plaintiff's citations, see id. at 10-11;

- The FDA "irrationally found" plaintiff's reference to its experience "'related to infrastructure analysis and application hosting'" despite the fact that the reference included "an assessment of application code, which is relevant to application development and maintenance," id. at 11;

7

- The FDA reviewed only the title of the referenced portion of plaintiff's contract rather than its content, see id.; and

- The FDA "relied on a small section of the relevant task order, and ignored the sections—cited by [plaintiff] above—that demonstrated systems engineering," id. at 12.

Likewise, according to plaintiff, the following examples demonstrate the agency's use of unstated evaluation criteria as it pertains to plaintiff's systems integration and systems engineering experience:

- The FDA used a definition of "Systems Engineering" that "is not supported by the RFQ or industry standards," id. at 14, by excluding plaintiff's experience providing network and infrastructure engineering as outside the scope of the RFQ on multiple occasions, see id. at 14-18;

- The FDA applied an "unstated and irrational definition of 'complex environment of interdependent systems,'" id. at 18, when it failed to credit plaintiff's experience updating three systems within a single toolkit and failed to provide justification to support its evaluation of plaintiff's work as not complex, see id. at 18-20;

- The FDA limited the definition of systems integration and systems engineering services to DME tasks and excluded O&M tasks, see id. at 20-21; and

- Similarly, the FDA excluded software development from the systems integration and engineering definition, see id. at 21-22.

Plaintiff goes on to cite several examples that it argues demonstrate the FDA's failure to read its proposal thoroughly and apply only the stated criteria as it relates to plaintiff's experience under section 2.2, coordinating data sharing efforts with enterprise systems:

- The FDA "focused only on a portion" of plaintiff's cited experience, id. at 23, and, therefore, failed to credit plaintiff with the experience it demonstrated, see id. 23-24;

- The FDA failed to credit plaintiff's citation that it acted "as a member or [subject matter expert (SME)] versus just facilitating additional meetings," instead noting that "while 'the Quoter has subject matter expertise, . . . the citation does not state that the Quoter performs

8

activities related to'" coordinating data sharing and reuse efforts, <u>id.</u> at 24;

- The FDA improperly reviewed only the title of plaintiff's cited experience, <u>see</u> <u>id.</u> at 25; and

- The FDA limited the definition of "enterprise," <u>id.</u> at 26, in finding that plaintiff's experience sharing data with the public did not involve the required experience, <u>see</u> <u>id.</u> at 26-27.

Finally, plaintiff offers specific examples it contends demonstrate that the FDA failed to read its proposal for, and applied unstated evaluation criteria to, plaintiff's experience under section 2.7, providing round-the-clock support:

- The FDA incorrectly determined that one of plaintiff's cited examples fell outside the 12-month period for task orders, <u>see</u> <u>id.</u> at 28;

- The FDA failed to account for plaintiff's cited experience providing off-site support and on-call support, <u>see</u> <u>id.</u> at 28-29;

- The FDA added a condition that the support be provided for software, and excluded support of "infrastructure, network, or data center components," <u>id.</u> at 30, although the RFQ only required that the support be "similar" to that required by the FDA, <u>see</u> <u>id.</u> at 29-31; and

- The FDA failed to consider plaintiff's support experience collectively, as required by the RFQ, <u>see</u> <u>id.</u> at 31.

Defendant argues in response that "[t]he FDA reasonably and properly applied the stated evaluation criteria in deciding to eliminate [plaintiff's] quotation from further award consideration." ECF No. 31 at 16. The RFQ, defendant contends, provided sufficient background information for the quoters to understand the FDA's requirements when submitting their proposals. <u>See</u> <u>id.</u> at 22-23. And, according to defendant, the PAG provided an explanation for each of its conclusions related to plaintiff's experience, including for each of the examples cited by plaintiff in its brief. <u>See</u> <u>id.</u> at 24-27, 35-36, 38-40, 43-45. Defendant goes on to note that the PAG also "repeatedly refers to and relies upon its stated evaluation criteria when explaining why it rejects [plaintiff's] proffered relevant experience," and thus does not apply any unstated evaluation criteria. <u>Id.</u> at 29. In addition, defendant contends that several of the unstated criteria identified by plaintiff are defined or explained in the RFQ consistent with the PAG's application of the terms. <u>See</u> <u>id.</u> at 30-33, 34-35, 36-37, 41-42, 45-47.

The court agrees with defendant. Plaintiff has not pointed the court to, nor could the court discern, any evidence that the FDA "complete[ly] fail[ed] to read and evaluate

the specific portions of the contract examples contained in [plaintiff's] quote," as plaintiff argues. ECF No. 29-1 at 9. To the contrary, it appears to the court that the PAG provided a detailed review and explanation for each of its conclusions related to plaintiff's proposal. See ECF No. 26-3 at 75-83. The court has carefully reviewed each of plaintiff's examples in support of its argument. In the court's view, plaintiff's assertions and examples are, in actuality, concerns with the conclusions the agency drew in evaluating plaintiff's proposal. It is not in the court's purview, however, to "'substitute its judgment for that of the agency.'" Bowman, 419 U.S. at 285 (quoting Citizens to Preserve Overton Park, 401 U.S. at 416). If the FDA has "articulate[d] a 'rational connection between the facts found and the choice made'" the court will uphold the decision. Id. (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)). The agency's evaluation includes eight pages of review and detailed connections between the facts found and conclusions drawn. See ECF No. 26-3 at 75-83. The court perceives no failure to consider relevant factors for evaluation or clear error of judgment by the FDA that would support overturning the agency's conclusions. See Bowman, 419 U.S. at 285.

Likewise, the court cannot discern any application of unstated evaluation criteria by the agency. As defendant points out, the FDA repeatedly applied the evaluation criteria as set forth in the RFQ. See ECF No. 31 at 29. Throughout its evaluation, the PAG applied the RFQ criteria consistently. See, e.g., ECF No. 26-3 at 78 (describing the RFQ definitions of "DME projects" and the context of the requirements); id. at 79 (referring to the RFQ background section for context and noting that the RFQ "specifically describes the complexities and interdependencies required"); id. at 81 (referring to the RFQ and noting that quoters were aware that network operations were not included in the necessary scope of work); id. at 82-83 (noting the specific RFQ requirements related to 24x7 system support). As with plaintiff's contention that the agency failed to read its proposal, its contention that the FDA applied unstated evaluation criteria appears to the court to be yet another means of attacking the agency's view of plaintiff's proposal. The court declines to substitute its judgment for that of the agency. See Bowman, 419 U.S. at 285.

    B.   There Was No Latent Ambiguity in the RFQ

Plaintiff argues that, if the court finds that the FDA's interpretation of the RFQ's requirements was reasonable, then it must also find that the RFQ contained latent ambiguities. See ECF No. 29-1 at 32. This is so, plaintiff reasons, because "[i]n each occurrence whereby the FDA interpreted its requirements as including or excluding experience that is not specifically listed in or required by the RFQ, [plaintiff] provided examples of relevant experience that was a reasonable interpretation of the RFQ's actual requirements that is not contradicted by the express language in the RFQ." Id. According to plaintiff, its interpretation of the RFQ terms "systems engineering, systems integration, complexity, enterprise, and 24x7x365 systems support" was reasonable. Id.

10

at 33. Therefore, plaintiff asserts, if the FDA's interpretation was also reasonable, the RFQ contained latent ambiguities. See id.

Defendant responds that plaintiff "fails to provide a detailed argument that sets forth legally sufficient grounds to demonstrate that any latent ambiguities exist." ECF No. 31 at 47. Defendant adds that its analysis of the FDA's evaluation of plaintiff's proposal "demonstrates that the RFQ clearly stated the FDA's needs and precisely identified the BPA evaluation criteria." Id. Therefore, according to defendant, "[n]o basis exists to second-guess the agency's rejection" of plaintiff's proposal. Id.

Again, the court agrees with defendant. Plaintiff has not demonstrated that the solicitation contains any latent ambiguities.[3] The court interprets a solicitation as it interprets a contract. See Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 997-98 (Fed. Cir. 1996) (interpreting a solicitation using contract interpretation principles). "[C]ontracts are not necessarily rendered ambiguous by the mere fact that the parties disagree as to the meaning of their provisions." Cmty. Heating & Plumbing Co., Inc. v. Kelso, 987 F.2d 1575, 1578 (Fed. Cir. 1993) (citations omitted). "That the parties disagree with a specification, or that a contractor's interpretation thereof is conceivable, does not necessarily render that specification ambiguous so as to require that it be construed against the drafter." Id. at 1579 (citing Ace Constr. Co. v. United States, 401 F.3d 816, 820 (Ct. Cl. 1968)). A solicitation is ambiguous, therefore, only where it is "susceptible of two different and reasonable interpretations," that are both consistent with the solicitation language. Id. (citations omitted).

Plaintiff asserts, without explanation, that its interpretation of the RFQ terms "systems engineering, systems integration, complexity, enterprise, and 24x7x365 systems support" was reasonable. ECF No. 29-1 at 33. As defendant points out, however, the FDA's evaluation repeatedly referred back to the terms of the RFQ to note that plaintiff's proposal, and by extension its definition of the solicitation terms, included work that explicitly fell outside of the RFQ's defined scope of work or described different work than that sought. See, e.g., ECF No. 31 at 25-27 (citing ECF No. 26-3 at 78-80); see also ECF No. 26-3 at 78 (noting that the work described in plaintiff's proposal "is not similar to the FDA's requirement" and also noting that the FDA required different work as described in the RFQ than that proposed by plaintiff); id. at 79 (stating that the work

---

[3] If the ambiguity is patent—"'obvious, gross, [or] glaring'"—the contractor must raise the issue immediately. NVT Tech., Inc. v. United States, 370 F.3d 1153, 1162 (Fed. Cir. 2004) (quoting H&M Moving, Inc. v. United States, 499 F.2d 660, 671 (Ct. Cl. 1974)); see also Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1315 (Fed. Cir. 2007) ("[A] party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection afterwards."). If, however, the ambiguity was not obvious on the face of the solicitation—it was latent—and plaintiff demonstrates reliance on the ambiguity, it will be interpreted against the government. NVT Tech., 370 F.3d at 1162.

described by plaintiff fell "outside the scope of" the solicitation). For instance, the PAG stated several times that the work described by plaintiff constituted "network operations and infrastructure analysis," which the RFQ explicitly excluded from the scope of work. Id. at 79, 82 ("'Data Center contractors are responsible for operations and maintenance of the servers, network and related infrastructure equipment.'"). The PAG also specifically referenced the RFQ terms when it determined that plaintiff's proposed work either did not fall within the scope of the RFQ or constituted work other than that sought by the RFQ. See, e.g., id. at 79 (noting that the RFQ "specifically describes the complexities and interdependencies required by ORA" and quoting the RFQ).

Although plaintiff may press its definitions to the court and the agency, the FDA referred to the RFQ requirements in defining the terms used in its evaluation. Plaintiff's definitions of the terms at issue are not consistent with the solicitation language and thus cannot be deemed to be reasonable interpretations of the solicitation. Cmty. Heating & Plumbing, 987 F.2d at 1579. In the court's view, plaintiff's alternative definitions amount to a further attempt to challenge the FDA's conclusions as to plaintiff's proposal. The court does not find that the RFQ contained any latent ambiguities.

  C.  The FDA Did Not Disparately Treat Plaintiff

Finally, plaintiff argues that the FDA "treated [plaintiff] disparately vis-a-vis these other quoters" by finding that plaintiff's experience did not satisfy the RFQ requirements while "accepting similar past performance examples offered by [the other quoters] that suffered from the same purported failures or worse." ECF No. 29-1 at 33, 34. Plaintiff contends that the FDA found the successful quoters' proposals to be acceptable in the face of the same issues it identified as unacceptable in plaintiff's proposal. See id. at 34-38, 39-41, 41-44.

In support, plaintiff offers several specific examples it contends demonstrate disparate treatment by the agency during evaluation:

- The FDA found that another quoter's "reliance on component integration" rather than systems integration was acceptable, while finding that plaintiff's was not, id. at 34;

- The FDA found that other quoters' systems support experience met the RFQ's requirements although it contained a scope of work similar to plaintiff's cited experience, which the agency found did not meet the RFQ's requirements, see id. at 36-37;

- The FDA found that another quoter's experience related to systems architecture met the RFQ's requirements, while it found that plaintiff's similar network architecture experience did not, see id. at 37-38;

12

- The FDA found that other quoters' experiences, which "bear no relation whatsoever to the scope of the requirement for integration of systems, engineering of systems or a complex environment of interdependent systems," met the RFQ's requirements, id. at 38-39;

- The FDA found another quoter's experience satisfied the RFQ's requirement for coordinating data sharing "despite that the referenced task order did not 'state or discuss' a requirement" to do so, id. at 40, which it had required of plaintiff, see id. 39-40; and

- The FDA found another quoter's experience satisfied the RFQ's requirement for providing round-the-clock support, "despite that the referenced task order does not actually indicate experience providing 24x7 system support coverage," id. at 41, and contained infrastructure support experience, while requiring such experience from plaintiff and excluding infrastructure support from its evaluation of plaintiff, see id. at 41-43.

Defendant responds that plaintiff "fails to apply the correct evaluation criteria when drawing comparisons between its proposal[]" and the other proposals and "fails to demonstrate that the FDA evaluated its proposal any differently from" other proposals. ECF No. 31 at 48. According to defendant, a review of each of plaintiff's examples demonstrates that plaintiff failed to take into account the entirety of the other quoters' proposals, resulting in plaintiff's failure to understand that, as a whole, the proposals complied with the RFQ requirements in a way that plaintiff's proposal did not. See id. at 49-54. Defendant concludes that plaintiff "misunderstands the background" of the other quoters' proposals and "selectively chose from the list of citations identified [by the other quoters'] and ignored others," resulting in plaintiff's failure to "demonstrate that the FDA unfairly credited the [other quoters'] citations to relevant experience when compared to the citations cited by [plaintiff]." Id. at 51, 53.

Plaintiff replies that defendant "selectively responded to only a few of the examples" and "provided no rebuttal to several of the most egregious examples." ECF No. 33 at 23. Plaintiff did not address defendant's contention that plaintiff ignored or failed to recognize citations provided by the other quoters' proposals that supported the PAG's conclusions. See id. at 23-32.

The court agrees with defendant. To prevail on its disparate treatment claim, plaintiff must demonstrate that the FDA "unreasonably downgraded its proposal for deficiencies that were 'substantively indistinguishable' or nearly identical from those contained in other proposals." Office Design Grp. v. United States, 951 F.3d 1366, 1372 (Fed. Cir. 2020) (quoting Enhanced Veterans Sols., Inc. v. United States, 131 Fed. Cl. 565, 588 (2017)). If plaintiff fails to demonstrate that the proposals at issue are

"indistinguishable for purposes of the evaluation, then the exercise instead crosses the line and involves the second guessing of 'minutiae,'" which is an inappropriate exercise for the court to undertake. Enhanced Veterans, 131 Fed. Cl. at 588 (quoting E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996)). A careful review of plaintiff's cited examples of allegedly disparate treatment demonstrates that plaintiff has not made the requisite showing that its proposal is "substantively indistinguishable" from the other quoters' proposals. See Office Design Grp., 951 F.3d at 1372.

Specifically, as defendant points out, plaintiff's examples are an incomplete record of the other quoters' proposals. See, e.g., ECF No. 31 at 51; ECF No. 29-1 at 35 (plaintiff reviewing only three of the seven sections cited by the comparison quoter). Each of the selected comparator quoters provided multiple citations that the PAG identified as meeting the requirements of the solicitation. See ECF No. 26-3 at 58-59 (Evaluation of Technical Quotations, Booze Allen Hamilton); id. at 73-75 (Evaluation of Technical Quotations, REI Systems). In the court's view, plaintiff's selective reference to portions of the PAG's review and the other quoters' proposals is insufficient to establish that the proposals are not "'substantively indistinguishable' or nearly identical." Office Design Grp., 951 F.3d at 1372. And, plaintiff failed to address this issue in its briefing, but chose to focus instead on the FDA's conclusions as to its and the other quoters' proposals. Plaintiff has failed to demonstrate that its proposal met the foundational requirement for a disparate treatment claim—specifically, that its proposal was substantively indistinguishable from others. See id. It would therefore be inappropriate for the court to engage in a review of the agency's conclusions, as such review would involve "second guessing of 'minutiae'" that is outside the purview of this court. Enhanced Veterans, 131 Fed. Cl. at 588.

IV. Conclusion

Accordingly, for the foregoing reasons:

(1)    Plaintiff's motion for judgment on the AR, ECF No. 29, is **DENIED**;

(2)    Defendant's cross-motion for judgment on the AR, ECF No. 31, is **GRANTED**;

(3)    The clerk's office is directed to **ENTER** final judgment **DISMISSING** plaintiff's complaint with prejudice; and

(4)    On or before **March 26, 2021**, the parties are directed to **CONFER** and **FILE** a **notice** informing the court as to whether any redactions are required before the court makes this opinion publicly available, and if so, attaching an agreed-upon proposed redacted version of the opinion.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge